# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WAH SING (US) TRADING LIMITED, LLC D/B/A EASYBIT, | ) ) ) |
| Plaintiff, | ) ) ) |
| DEDRIC DUNCAN, | ) ) ) |
| Defendant. | ) ) |

Civil Action No.

## VERIFIED COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

This matter involves the blatant violation of a non-compete covenant and other illicit acts, including embezzlement, conversion, and breaches of fiduciary duty and loyalty, by Defendant Dedric Duncan ("Duncan" or "Defendant") against his former employer, Plaintiff Wah Sing (US) Trading Limited, LLC d/b/a EasyBit ("EasyBit" or "Plaintiff").

In an effort to obtain a remedy for Duncan's unlawful conduct, EasyBit files this Verified Complaint for Injunctive Relief and Damages, and respectfully requests a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting Duncan from, among other things, continuing to violate his non-compete covenant and to interfere with EasyBit's contractual and business relations. EasyBit

also requests damages resulting from Duncan's illicit acts. EasyBit makes the following allegations in support of its requests for relief.

## I.     JURISDICTION, PARTIES, AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that (a) it is between citizens of different states, and (b) the matter in controversy exceeds $75,000, exclusive of interest and costs.

2.     EasyBit is a Nevada limited liability company, with its headquarters located in the State of Colorado. No member of EasyBit or EasyBit's parent entity is a citizen of the State of Georgia.

3.     Duncan is a citizen of the State of Alabama. Upon information and belief, Duncan can be served with process in Jefferson County, Alabama at 2412 2nd Ave. N, Apt. 4, Birmingham, Alabama 35203, or wherever he may be found. This Court has personal jurisdiction over Duncan pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

4.     Venue for this action lies in this judicial district and division pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims in this Complaint occurred in this judicial district.

## II.   FACTUAL BACKGROUND

### A. Bitcoin and EasyBit

5.    Bitcoin is a digital form of currency which allows users to transact business without an intermediary (i.e., a bank or credit card company). Bitcoin can be exchanged for products, services, and other currencies. Merchants have an incentive to accept bitcoin because fees are lower than the 2–3% fees imposed by credit card processors, and typically fees are paid by the purchaser, not the merchant. Moreover, government agencies in many countries are beginning to recognize bitcoin as a legitimate and valuable form of currency. For example, in the United States, the Federal Election Commission approved the use of bitcoin donations to political candidates and committees, and former Presidential candidate Rand Paul has accepted donations in bitcoin. Additionally, IBM recently announced that it plans on becoming the biggest backer of a technology that underpins the bitcoin digital currency.

6.    One way to acquire or exchange bitcoin is through an automatic teller machine (ATM) designed specifically for bitcoin (a "Bitcoin ATM"). For example, if a U.S. based company was asked by a photographer in the Netherlands to pay her the equivalent of $500 in bitcoin in order to use one of her photographs on its website, one way the company could acquire those bitcoin is through a Bitcoin

ATM. The company would: (i) locate a Bitcoin ATM; (ii) insert $500 cash plus a processing fee; (iii) receive a unique code worth the equivalent of $500 in bitcoin; and (iv) electronically transfer/wire the bitcoin from its bitcoin account (or "wallet") to the photographer's bitcoin wallet.

7. EasyBit is one of the world's leading Bitcoin ATM companies. It provides access to buy and/or sell bitcoin in over a dozen countries.

8. EasyBit's most profitable Bitcoin ATM's are located in Atlanta and Marietta, Georgia. Within this judicial district, EasyBit also owns and operates successful Bitcoin ATM's in Acworth and Lilburn, Georgia.

9. EasyBit is a wholly owned subsidiary of Wah Sing (HK) Trading Limited, which is owned entirely by Michael Dupree, Jr. ("Dupree").

10. Dupree, a serial entrepreneur, founded EasyBit in 2014 and serves as its Chairman. As EasyBit's business began to grow, Dupree realized that he needed to hire someone to manage EasyBit's day-to-day operations so that he could focus on EasyBit's global expansion and business strategy.

**B. EasyBit's Employment of Duncan and His Non-Compete Covenant**

11. Dupree had met Duncan at a bitcoin conference in 2014, and decided to reach out to him about working for EasyBit.

12. On April 3, 2015, Duncan and EasyBit entered into a negotiated employment agreement (the "Employment Agreement") pursuant to which Duncan became EasyBit's Chief Executive Officer ("CEO") with the primary responsibility of "managing the set up, operation, and positive cash flow from bitcoin ATM's, and bitcoin product services, nationally." (A true and correct copy of the Employment Agreement is attached hereto as Exhibit "A"). Upon information and belief, Duncan signed the Employment Agreement in either Georgia or Alabama. He was paid a $5,000 signing bonus upon execution, and was eligible to receive a 10% equity interest in EasyBit after completing a year of employment.

13. In the Employment Agreement, Duncan agreed to the following provision (the "Non-Compete Covenant"):

> The employee specifically agrees that for a period of 1 year after the Employee is no longer employed by the Company, the Employee will not engage, directly, or indirectly, either as proprietor, stockholder, partner, officer, Owner, employee, or otherwise, in the same or similar activities as were performed for the Company in any business which distributes or sells products or provides services similar to those distributed sold or provided by the Company at any time during the period of your employment with the Company.

14. Soon after executing the Employment Agreement, Duncan began setting up and operating EasyBit's Bitcoin ATM's on EasyBit's behalf.

15. For example, on June 29, 2015, EasyBit entered into an "Agreement for the Placement of a Bitcoin ATM" (a "Location Agreement") with Headmasters

Barbershop in Atlanta, Georgia. Duncan executed the Location Agreement for EasyBit and, once the Bitcoin ATM was delivered to Headmasters Barbershop in July 2015, Duncan set up and serviced this machine, including by withdrawing the cash and bitcoin deposited by customers and refilling the bitcoin allotment.

16. In 2015, EasyBit amended its filings with the Nevada Secretary of State to list Duncan as one of EasyBit's officers. (A true and correct copy of the EasyBit corporate data sheet from the Nevada Secretary of State's website is attached hereto as Exhibit "B").

17. In his position as EasyBit's CEO, Duncan had virtually unlimited access to EasyBit's physical assets (its Bitcoin ATM's, cash, and bitcoin), as well as to EasyBit's customer, vendor, and host location information, all of which EasyBit considers to be confidential and proprietary. Besides Duncan and Dupree, EasyBit had only one other employee.

C. **Formation of EasyBit Alabama and Duncan's Scheme Against EasyBit**

18. In July 2015, EasyBit formed a subsidiary called EasyBit Alabama, LLC ("EasyBit Alabama") to handle EasyBit's burgeoning business interests in the southeastern U.S. EasyBit provided 100% of the start-up capital for EasyBit Alabama, and was to be its sole owner.

6

19. Duncan and EasyBit agreed to amend the Employment Agreement in part such that Duncan would also serve as the CEO of EasyBit Alabama and, in addition to his compensation directly from EasyBit, he would receive 30% of the net profits generated by EasyBit Alabama while he served as its CEO. Duncan's responsibilities now included working with accountants and legal counsel to ensure that both EasyBit and EasyBit Alabama were in compliance with all applicable laws.

20. EasyBit Alabama was registered with the Alabama Secretary of State on July 29, 2015. On the same date, EasyBit Alabama registered for a business license with Jefferson County, Alabama. Under business location, the license listed: "EasyBit, 2412 2nd Ave. N, Apt. 4, Birmingham, Alabama 35203." All of the fees associated with the registration and licensure of EasyBit Alabama were paid by EasyBit.

21. In accordance with the foregoing amendment of the Employment Agreement, EasyBit Alabama began to pay 70% of its net profits to EasyBit and 30% to Duncan.

22. In late 2015, EasyBit hired a COO, Jonathan Giger, to, among other things, track the financial performance of EasyBit and EasyBit Alabama. After reviewing the records and receipts for each of EasyBit's Bitcoin ATM's, and comparing them to the records provided by Duncan, Giger determined that Duncan

was underreporting to EasyBit the amount of cash generated by each of EasyBit's Bitcoin ATM's and keeping the difference for himself.

23. EasyBit has evidence that Duncan has thereby pocketed for himself at least $79,311 through underreporting to EasyBit the amount of cash generated by each of EasyBit's Bitcoin ATM's.

24. When Dupree confronted Duncan about this suspected embezzlement on February 4, 2016, Duncan immediately resigned as CEO of EasyBit, and directed any further inquiry to his lawyer.

25. Over the next two or three days, after resigning from EasyBit, Duncan used his keys to all of EasyBit's Bitcoin ATM's in Georgia and Alabama to empty the cash from each of them. EasyBit has calculated that Duncan stole at least $16,712 in cash during this looting.

26. After his resignation, Duncan additionally refused to turn over to Easybit at least $60,923.98 he had reported emptying from EasyBit's Bitcoin ATM's prior to his resignation.

27. EasyBit reported Duncan's misconduct to the Lilburn, Georgia police department because it believed Duncan had not yet looted the EasyBit Bitcoin ATM located at a shop in Lilburn. The department's investigation is ongoing.

28. Upon information and belief, Duncan also falsely told the owners and/or managers of the locations that host EasyBit's Bitcoin ATM's (i.e., Headmasters Barbershop) that Dupree and EasyBit were no longer operating in Georgia and Alabama, and that they should henceforth deal only with Duncan.

29. Duncan physically removed two of EasyBit's Bitcoin ATM's and replaced, or attempted to replace, them with machines that he had apparently already leased from one of EasyBit's competitors. Although EasyBit has recovered the two Bitcoin ATM's, one of them was badly damaged by Duncan.

30. Despite multiple requests to Duncan and his attorney, Duncan refuses to comply with the Non-Compete Covenant, or to return any of the funds he stole from EasyBit.

### III. CAUSES OF ACTION

#### COUNT ONE
**(Breach of Contract)**

31. EasyBit incorporates by reference the above paragraphs.

32. In the Non-Compete Covenant, Duncan agreed that he would not, while he was employed by EasyBit and for a period of one year after his employment with EasyBit ended, compete with EasyBit.

33. Duncan has breached, and continues to breach, the Non-Compete Covenant.

34. EasyBit has performed all of its obligations under the Employment Agreement.

35. EasyBit has suffered and will continue to suffer irreparable harm to its legitimate business interests if Duncan is not enjoined from breaching the Non-Compete Covenant.

36. EasyBit has also suffered and will continue to suffer damages as a result of Duncan's breach of the Non-Compete Covenant in an amount to be proven at trial.

## COUNT TWO
**(Tortious Interference with Contractual and Business Relations)**

37. EasyBit incorporates by reference the above paragraphs.

38. Duncan's actions as described herein, including his direction to the owners and/or managers of the locations that host EasyBit's Bitcoin ATM's to deal only with him and not EasyBit, interfered with EasyBit's contractual and business relations.

39. Duncan's conduct was intentional, improper and done with the malicious intent to harm EasyBit.

40. EasyBit has suffered and will continue to suffer irreparable harm to its legitimate business interests if Duncan is not enjoined from interfering with EasyBit's contractual and business relations.

41. As a direct and proximate result of Duncan's improper, malicious and intentional interference with EasyBit's business relations, EasyBit has suffered and continues to suffer damages in an amount to be proven at trial.

42. EasyBit is entitled to punitive damages as a result of Duncan's tortious actions in an amount to be determined at trial.

## COUNT THREE
### (Breach of Fiduciary Duty and Duty of Loyalty)

43. EasyBit incorporates by reference the above paragraphs.

44. As CEO of EasyBit, Duncan owed a fiduciary duty to EasyBit, including a duty to act at all times in the interest of EasyBit, and a duty of loyalty.

45. Duncan breached his fiduciary duty and duty of loyalty to EasyBit by, among other things: (i) misappropriating and converting EasyBit's corporate assets to his own use without authority; (ii) intentionally falsifying EasyBit's financial records to conceal his conversion and theft of corporate assets, and; (iii) lying to EasyBit's customers and host locations that EasyBit was no longer operating the EasyBit ATM's in Georgia and Alabama.

46. As a direct and proximate result of Duncan's breach of his fiduciary duty and duty of loyalty, EasyBit has suffered and continues to suffer damages in an amount to be proven at trial, and punitive damages in an amount to be determined at trial.

## COUNT FOUR
### (Conversion)

47. EasyBit incorporates by reference the above paragraphs.

48. Duncan has willfully and unlawfully taken and converted specific, identifiable sums of currency (the "Converted Funds") belonging to EasyBit without authorization and in a manner inconsistent with EasyBit's right to the Converted Funds.

49. The Converted Funds include, but are not limited to: (i) $77,635.98 emptied from EasyBit's Bitcoin ATM's, and (ii) $79,311 embezzled from EasyBit through underreporting by Duncan between June 2015 and February 2016.

50. EasyBit has demanded return of the Converted Funds, but Duncan has failed and refused to return them.

51. As a result of Duncan's conversion of the Converted Funds, EasyBit has been injured and suffered damages in an amount to be determined at trial. EasyBit is also entitled to an award of punitive damages on this claim in an amount to be determined at trial.

## COUNT FIVE
## (MONEY HAD AND RECEIVED/UNJUST ENRICHMENT)

52.　EasyBit incorporates by reference the above paragraphs.

53.　As a direct and proximate cause of the actions detailed above, EasyBit has been injured and suffered monetary loss, and Duncan has obtained profits, revenue, and other benefits to which he is not entitled.

54.　Duncan has therefore been unjustly enriched in an amount to be determined at trial.

55.　In the alternative, if the Employment Agreement is held to be unenforceable, which EasyBit denies, EasyBit is entitled to damages for the amount that Duncan has been unjustly enriched.

## COUNT SIX
## (ACCOUNTING)

56.　EasyBit incorporates by reference the above paragraphs.

57.　EasyBit cannot know the amount to which Duncan has been unjustly enriched until an accounting is done of all his financial and business transactions and accounts.

58.　Accordingly, EasyBit seeks equitable relief from this Court in the form of an accounting of Duncan's books and records to determine the extent of his unjust enrichment, and the corresponding damages.

## COUNT SEVEN
### (Injunctive Relief)

59.     EasyBit incorporates by reference the above paragraphs.

60.     EasyBit has a substantial likelihood of success on the merits of its claims in this action.

61.     The misconduct of Duncan will cause irreparable harm to EasyBit for which it cannot be compensated adequately in damages, including for the breach of the Non-Compete Covenant by Duncan and Duncan's interference with EasyBit's contractual and business relations. EasyBit also cannot be compensated adequately in damages for the loss of business and goodwill caused by Duncan.

62.     The injunctive relief sought by EasyBit will not disserve the public interest.

63.     The balance of equities favors the entry of injunctive relief. Courts may enter injunctive relief to preserve the status quo until final hearing.

64.     Injunctive relief will preserve the status quo pending a trial on the merits.

65.     EasyBit is thus entitled to a temporary restraining order, and preliminary and permanent injunctive relief.

## COUNT EIGHT
### (Punitive Damages)

66. EasyBit incorporates by reference the above paragraphs.

67. In breaching his fiduciary duty and duty of loyalty as well as intentionally converting EasyBit's funds, Duncan showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to the consequences, and Duncan acted with the specific intent to cause harm.

68. In order to deter Duncan from like behavior in the future, EasyBit requests that punitive damages be assessed against him in an amount to be determined at trial.

## COUNT NINE
### (Attorneys' Fees and Expenses of Litigation)

69. EasyBit incorporates by reference the above paragraphs.

70. Duncan has acted in bad faith toward EasyBit in the events giving rise to this lawsuit, has been stubbornly litigious, and has put EasyBit to unnecessary trouble and expense. Pursuant to O.C.G.A. § 13-6-11, EasyBit is entitled to recover from Defendants its expenses of litigation, including reasonable attorneys' fees in an amount to be proven at trial.

## PRAYER FOR RELIEF

EasyBit specifically requests as follows:

a. that the Court enter a temporary restraining order, and a preliminary and permanent injunction, precluding Duncan from violating the Non-Compete Covenant in his Employment Agreement and from interfering with EasyBit's contractual and business relations;

b. that the Court enter judgment against Duncan for violating the Non-Compete Covenant in his Employment Agreement, for his tortious interference with EasyBit's contractual and business relations, for his breach of fiduciary duty and duty of loyalty, and for his conversion of the Converted Funds, all in an amount of compensatory to be proven at trial;

c. in the alternative, that the Court enter judgment against Duncan for the amount that he has been unjustly enriched;

d. that the Court award EasyBit equitable relief in the form of an accounting of Duncan's books and records;

e. that EasyBit be awarded punitive damages against Duncan in an amount to be determined at trial;

f. that the Court enter judgment against Duncan for EasyBit's attorneys' fees, costs, and litigation expenses as otherwise specifically permitted by law; and

g. that the Court grant and award EasyBit such other and further relief against Duncan to which it is entitled.

Respectfully submitted this 17th day of February, 2016.

                        **TAYLOR ENGLISH DUMA LLP**

                        */s/Michael Eric Ross*
                        Michael Eric Ross
                        GA Bar No. 615190
                        Eric S. Fisher
                        GA Bar No. 250428
                        1600 Parkwood Circle, Suite 400
                        Atlanta, GA 30339
                        Telephone: (770) 434-6868
                        Facsimile: (770) 434-7376
                        mross@taylorenglish.com
                        efisher@taylorenglish.com

                        *Counsel for Plaintiff Wah Sing (US) Trading Limited, LLC d/b/a EasyBit*

## **VERIFICATION**

I, Michael J. Dupree, Jr., Chairman of the Plaintiff in the above-captioned civil action, do hereby declare and verify under penalty of perjury that the information supplied in the foregoing **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** is true and correct to the best of my knowledge and belief, and I am competent to so testify.

Executed this 17 day of February, 2016.

_____
Michael J. Dupree, Jr.