**EXHIBIT E**

## AGREEMENT FOR THE PLACEMENT OF A BITCOIN ATM

This "Agreement for the Placement of a Bitcoin ATM" (hereinafter the "Agreement") is entered into on 10/23/2015 (hereinafter the "Effective Date") by and between EasyBit (hereinafter the "Licensor"), a Nevada corporation, and Pale Eddie's Pour House, a company incorporated under the laws of the Alabama (hereinafter, the "Licensee"). (hereinafter, collectively, the "Parties").

## RECITALS

**WHEREAS**, the principal place of business for Licensor is 93 S Jackson St. #31915, Seattle, Washington 98014;

**WHEREAS**, the principal place of business for Licensee is 2308 2nd Ave N, Birmingham, Alabama 35233;

**WHEREAS**, Licensor is the owner of a substantial number of bitcoin ATMs, through which Customers may purchase and sell Digital Currency; and

**WHEREAS**, Licensee wants to provide a location for one (1) bitcoin ATM.

**NOW THEREFORE**, for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

I. **DEFINITIONS.**

**I.1.** Customer.

Shall mean end users who purchase and/or sell Digital Currency *via* the Machine.

**I.2.** Delivery Date.

Shall mean 10/23/2015.

**I.3.** Digital Currency.

Shall mean any and all Internet-based currencies that use distributed-ledger algorithms to determine ownership and transfer of said currencies. Examples of "Digital Currency" include bitcoin, litecoin, dogecoin, *etc*.

**I.4.** Effective Date.

Shall have the same meaning as that given in the Preamble to this Agreement (above).

**I.5.** Intellectual Property.

Shall mean any patent, (un)registered design, copyright, design right, trade mark, service mark, as well as any application to register any of the aforementioned rights, trade secrets,

know-how, performances on a par with a patentable invention, *sui generis* rights in databases and any other intellectual or industrial rights of whatever nature in any part of the world, which at any moment are the property of Licensor, or which are licensed to it.

**I.6.** Location.

Shall mean the business premises of the Licensee, located at 2308 2nd Ave N, Birmingham, Alabama.

**I.7.** Machine.

Shall mean the bitcoin ATM machine provided by Licensor to Licensee; which allows Customers to purchase or sell bitcoins *via* the Software.

**I.8.** Profit.

Shall mean Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA"), as calculated under the International Accounting Standards ("IAS").

**I.9.** Software.

Shall mean the object and source code of the computer software running on the Machine that enables Customers to purchase and sell Digital Currency.

## II. LIMITED LICENSE TO USE THE MACHINE.

**II.1.** Placement of the Machine.

Licensor hereby grants Licensee a limited license to place a Machine at the Location for the duration of this Agreement.

**II.2.** Ownership of the Machine.

At all times, both during and after the expiration of this Agreement, the Machine shall remain the sole property of Licensor. Nothing in this Agreement is intended to convey ownership of the Machine to Licensee.

**II.3.** Delivery Date.

Licensor shall deliver a Machine to Licensee at the Location on or before the Delivery Date.

**II.4.** Duties of Licensee.

Licensee shall provide a working and uninterrupted Internet connection to the Machine through an Ethernet cable attached to the Machine.

Licensee shall have adequate insurance coverage to cover theft of the machine.

### III. FEES AND PAYMENT.

### III.1. Payment to Licensee.

Licensor shall pay to Licensee 10% of the Profit on a monthly basis, in arrears, for the previous month's activity.

### III.2. Monthly Calculation of Profit.

Licensor will send to Licensee a monthly overview of the Profit within ten (10) days of the end of each calendar month. Payment for the previous month's activity will then be sent to Licensee within twenty-five (25) days of the monthly overview of the Profit.

### IV. INTELLECTUAL PROPERTY RIGHTS.

### IV.1. Intellectual Property Rights.

The Intellectual Property and all rights to said Intellectual Property shall be owned exclusively by Licensor. Nothing in this Agreement is intended to transfer any Intellectual Property rights to Licensee.

### V. WARRANTIES.

### V.1. Licensor Warranties.

Licensor warrants that: a) it is the owner of the Machine; and b) that it is entitled to enter into this Agreement.

### V.2. Licensee Warranties.

Licensee warrants that: a) it is entitled to enter into this Agreement; b) that it will not tamper, interfere with, hinder, or otherwise negatively impact the performance of the Machine; c) it will ensure that the Machine is always powered on and connected to the Internet; d) it will not use the Machine for unlawful purposes; and e) that it will notify Licensor immediately if the Machine malfunctions for any reason.

### VI. INDEMNIFICATION.

To the extent allowed under applicable law, each Party agrees to defend, indemnify, and hold harmless from and against any and all liabilities, claims, losses, lawsuits, judgments, and/or expenses, including attorney's fees, arising directly or indirectly from any act or failure to act by a party, or any of its officers, directors, employees, or agents, which may occur during the performance of this Agreement.

### VII. LIABILITY.

To the extent permitted under applicable law, Licensor shall not be liable for any damages that may arise due to the placement of the Machine at the Location. Should liability arise for

any cause whatsoever, Licensor's liability is limited to direct damages up to a maximum of $1,000 per event; with a series of related events to be construed as one (1) event. To be clear, Licensor's damages shall not include consequential damages, indirect damages, loss of profits, loss of business opportunity, lost sales, and loss or damage to data.

VIII.   **TERM AND TERMINATION.**

This Agreement is entered into for an indefinite period of time. Nonetheless, each party hereto may terminate this Agreement, without cause, by giving the other party written notice sixty (60) days prior to such intended termination. Nonetheless, each party may immediately terminate this Agreement if the other party applies for a moratorium of payments, is declared insolvent or bankrupt, or otherwise ceases to meet its financial obligations.

IX.   **DISPUTE RESOLUTION.**

If a dispute arises between the Parties (hereinafter the "Dispute"), the parties shall first attempt to resolve such dispute *via* non-binding mediation at a venue and with a mediator agreed upon by both Parties.

Any controversy or claim relating to this Lease, including the construction or application of this Lease, will be settled by binding arbitration under the rules of the American Arbitration Association, and any judgment granted by the arbitrator(s) may be enforced in any court of proper jurisdiction.

X.   **GENERAL TERMS.**

**X.1.**   Choice of Law.

This Agreement shall be governed by Nevada Law.

**X.2.**   Transfer of Rights and Obligations by Licensor.

Licensor may transfer its rights and obligations under this Agreement to third parties.

**X.3.**   Survival of Agreement.

If any provision of this Agreement is determined to be invalid (illegal or unlawful) by a court of competent jurisdiction, such invalidity shall not affect the parties' rights and duties hereunder with respect to the remaining provisions of the Agreement, and such invalid provision shall be replaced with a provision that reflects the parties' intentions when executing this Agreement, and shall be constructed to be as close in meaning as is possible to the invalid provision.

Doc ID: f4af3b3e93e9d3aeae6e70ffa57c6760cdad8b29

**WITNESS WHEREOF**, the Parties have agreed to the above provisions as of the Effective Date.

**LICENSOR**

_____
Dedric Duncan, on behalf of
EasyBit LLC

**LICENSEE**

_____
on behalf of
Pale Eddie's Pour House